IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JAMIEL L. WILLIAMS,** : <br> **Plaintiff** : <br> : <br> v. : <br> : <br> **PA DEPARTMENT OF** : <br> **CORRECTIONS, <u>et al.</u>,** : <br> **Defendants** : | **No. 1:22-cv-01337** <br><br> **(Judge Rambo)** |

## MEMORANDUM

<u>Pro</u> <u>se</u> Plaintiff Jamiel L. Williams ("Plaintiff"), who is a state prisoner currently incarcerated at State Correctional Institution Huntingdon ("SCI Huntingdon") in Huntingdon, Pennsylvania, has commenced the above-captioned action by filing a complaint, followed by an amended complaint, pursuant to the provisions of 42 U.S.C. § 1983 ("Section 1983"), asserting violations of his constitutional rights. (Doc. Nos. 1, 18.) In accordance with the Prison Litigation Reform Act,[1] the Court has conducted an initial review of Plaintiff's amended complaint. For the reasons set forth below, the Court will dismiss Plaintiff's amended complaint for failure to state a claim upon which relief can be granted. However, the Court will grant Plaintiff leave to file a second amended complaint.

---

[1] <u>See</u> The Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, 110 Stat. 1321 (Apr. 26, 1996).

## I.     BACKGROUND

On August 26, 2022, Plaintiff filed his original Section 1983 complaint against the following Defendants: (1) the Pennsylvania Department of Corrections ("DOC"); (2) Smart Communications, the DOC's contracted mail processing center located in St. Petersburg, Florida; (3) Mr. Rivello ("Rivello"), a Superintendent at SCI Huntingdon ("Rivello"); and (4) Ms. Goss ("Goss"), a Unit Manager at SCI Huntingdon ("Goss").  (Doc. No. 1.)  Following some initial administrative matters (Doc. Nos. 6, 8), Plaintiff filed a certified motion for leave to proceed in forma pauperis and his prisoner trust fund account statement on September 22, 2022 (Doc. Nos. 12, 13).  A few days later, Plaintiff filed a motion to amend his original complaint (Doc. No. 14), as well as a motion requiring Defendant Smart Communications to show, among other things, proof of documentation from Plaintiff (Doc. No. 15).

On October 3, 2022, the Court granted Plaintiff's certified motion for leave to proceed in forma pauperis and deemed his complaint filed.  (Doc. No. 17.)  The Court also granted Plaintiff's motion to amend and directed him to file his amended complaint within thirty (30) days.  (Id.)  The Court denied as premature, however, Plaintiff's motion requiring proof of documentation from Defendant Smart Communications since Defendants had not yet been served with the original complaint and Plaintiff was granted leave to file an amended complaint.  (Id.)

On October 17, 2022, Plaintiff his amended Section 1983 complaint. (Doc. No. 18.) He once again names Defendants DOC, Smart Communications, Rivello and Goss, but he also names, for the first time, Defendant J. Corley, a Security Lieutenant at SCI Huntingdon (collectively, "Defendants"). (Id. at 1-3.) In his amended complaint, Plaintiff asserts that the events giving rise to his claims occurred at SCI Huntingdon, beginning in August of 2021 and continuing up until October of 2022. (Id. at 4 (citing the pertinent dates as follows: June 27, 2022; July 11, 2022; August 17, 2022; August 25, 2022; and August 29, 2022).) Plaintiff also asserts that he has brought this action because of the "Departmental, Institutional[,] and Employee wrongs[,]" as well as the "Procedural and Policy mishaps that need to be addressed and fixed[,]" as they are resulting in a "a Violation of Constitutional & Prisoner rights[.]" (Id.)

In connection with these assertions, Plaintiff alleges that Defendants DOC and Smart Communications do not have "permission verbally or written/[d]ocumented from [him] to scan/copy [his] original mail and give [him] copies." (Id.) Plaintiff also alleges that there is a "Violation of Mail & Denial of Legal Mail[ ] From Another State due to No Court Control Number, No Standardized U.S. Postal Mailboxes[.]" (Id.; id. at 5 (suggesting that "state legal work" is not "get[ting] accepted into facilities like SCI[ ] Huntingdon").) In addition, Plaintiff alleges that "[he] was assaulted" (id. at 4) by Defendant Corley (id. at 5) and that Defendant

3

Corley read his legal mail (id).  Finally, Plaintiff seeks to hold Defendant Goss "liable to replace [the] value of stolen property[.]"  (Id.)

As a result of these allegations, Plaintiff appears to assert a violation of his First Amendment rights against Defendants DOC and Smart Communication concerning his mail, a violation of his Eighth Amendment rights against Defendant Corley for allegedly assaulting him, and a violation of his Fourteenth Amendment rights against Defendant Goss concerning his allegedly "stolen" property.  (Id.) Plaintiff, however, does not assert any violations of his rights against Defendant Rivello.  As for relief, Plaintiff seeks both injunctive and monetary relief against Defendants.  (Id.)

## II.   LEGAL STANDARD

Pursuant to 28 U.S.C. § 1915(e)(2), district courts are required to review complaints in civil actions where a litigant is proceeding in forma pauperis.  See 28 U.S.C. § 1915(e)(2).  If the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief, then the district court must dismiss the complaint.  See id.  In dismissing claims under § 1915(e)(2), district courts apply the standard governing motions to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  See Tourscher v. McCullough, 184 F.3d 236, 240 (3d Cir. 1999). To avoid dismissal under Rule 12(b)(6), a civil complaint must set out "sufficient

factual matter" to show that its claims are facially plausible.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

When evaluating the plausibility of a complaint, the Court is required to "accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff, and ultimately determine whether plaintiff may be entitled to relief under any reasonable reading of the complaint."  See Mayer v. Belichick, 605 F.3d 223, 229 (3d Cir. 2010); Kedra v. Schroeter, 876 F.3d 424, 434 (3d Cir. 2017) (stating that the court "must accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the plaintiff]" (citation and internal quotation marks omitted)).

Additionally, in the specific context of pro se prisoner litigation, a district court must be mindful that a document filed pro se "is to be liberally construed." See Estelle v. Gamble, 429 U.S. 97, 106 (1976).  A pro se complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]"  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citation and internal quotation marks omitted).

## III.  DISCUSSION

### A.  Section 1983

Plaintiff has filed his amended complaint pursuant to the provisions of Section 1983, asserting violations of his rights under the First, Eighth, and Fourteenth Amendments.  (Doc. No. 18.)  Section 1983 provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Id.  Thus, "Section 1983 imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or laws of the United States."  See Shuman v. Penn Manor School Dist., 422 F.3d 141, 146 (3d Cir. 2005) (citation omitted).  Section 1983 "does not create any new substantive rights but instead provides a remedy for the violation of a federal constitutional or statutory right."  See id. (citation omitted).

### 1. Defendant DOC

Plaintiff alleges that Defendant DOC does not have "permission verbally or written/[d]ocumented from [him] to scan/copy [his] original mail and give [him] copies." (Doc. No. 18 at 4.) Plaintiff also alleges that there is a "Violation of Mail & Denial of Legal Mail[ ] From Another State due to No Court Control Number, No Standardized U.S. Postal Mailboxes[.]" (Id.; id. at 5 (suggesting that "state legal work" is not "get[ting] accepted into facilities like SCI[ ] Huntingdon").) However, for the reasons discussed below, the Court finds that Defendant DOC has Eleventh Amendment immunity and is not considered a "person" for purposes of Section 1983.

"Absent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court." See Kentucky v. Graham, 473 U.S. 159, 169 (1985); Lombardo v. Pennsylvania, 540 F.3d 190, 194 (3d Cir. 2008) (explaining that "[t]he immunity of States from suit in the federal courts is a fundamental aspect of state sovereignty"). It is well-established that the Commonwealth of Pennsylvania has not waived this immunity, see 42 Pa. Const. Stat. Ann. § 8521(b), and that Congress did not abrogate the States' Eleventh Amendment immunity in enacting Section 1983. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 66 (1989) (stating that "Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum

for litigants who seek a remedy against a State for alleged deprivations of civil liberties" (citation omitted)); Quern v. Jordan, 440 U.S. 332, 341 (1979) (explaining that Section 1983 does not override the States' Eleventh Amendment immunity). Moreover, this Eleventh Amendment immunity extends to all state agencies or departments "having no existence apart from the state." See Laskaris v. Thornburgh, 661 F.2d 23, 25 (3d Cir. 1981) (citation omitted). As such, the DOC and its institutions, such as SCI Huntingdon, are entitled to the same Eleventh Amendment immunity that the Commonwealth enjoys. See 71 P.S. § 61(a).

Additionally, in order for Plaintiff to state a clam under Section 1983, he must allege that a "person" acting under the color of state law deprived him of his constitutional rights. See Rehberg v. Paulk, 566 U.S. 356, 361 (2012). However, a state agency, such as the DOC, is not considered a "person" for purposes of Section 1983 and, thus, is not amenable to suit under this statute. See Fischer v. Cahill, 474 F.2d 991, 992 (3d Cir. 1973) (stating that a state agency may not be sued under Section 1983 because it is not a "person" for purposes of that statute); Foye v. Wexford Health Sources Inc., 675 F. App'x 210, 215 (3d Cir. 2017) (unpublished) (dismissing Section 1983 claims against the DOC and one of its institutions because they are entitled to Eleventh Amendment immunity and "are not persons subject to suit under" Section 1983).

Accordingly, for all of these reasons, Plaintiff's amended complaint fails to state a claim upon which relief can be granted against Defendant DOC. Any Section 1983 claims Plaintiff has asserted against Defendant DOC will, therefore, be dismissed from this litigation.

### 2. Defendant Smart Communications

In the amended complaint, Plaintiff appears to be asserting a violation of his First Amendment rights against Defendant Smart Communications based upon allegations related to his mail. (Doc. No. 18 at 4, 5.) In support of this claim, Plaintiff alleges that Defendant Smart Communications does not have "permission verbally or written/[d]ocumented from [him] to scan/copy [his] original mail and give [him] copies." (Id.)

Having reviewed these allegations, the Court finds that, even if Defendant Smart Communications was acting under the color of state law, Plaintiff's amended complaint fails to state a claim upon which relief can granted. The Court construes Plaintiff's First Amendment claim against Defendant Smart Communications as challenging, essentially, the DOC's mail policy, which is set forth in DC-ADM 803.[2] Under that policy, all incoming non-privileged mail "must" be sent to the DOC's

---

[2] To better understand Plaintiff's claims, the Court takes judicial notice of DC-ADM 803, which is titled "Inmate Mail and Incoming Publications" and publicly available at: https://www.cor.pa.gov/About%20Us/Documents/DOC%20Policies/803%20Inmate%20Mail%20and%20Incoming%20Publications.pdf.

third-party mail processing center, i.e., Defendant Smart Communications in St. Petersburg Florida. See DC-ADM 803, Inmate Mail and Incoming Publications Procedures Manual, § (C)(1). The processing center staff opens and scans each piece of inmate mail and electronically transmits the scanned copies to the appropriate facility staff. See DC-ADM 803, Inmate Mail and Incoming Publications Procedures Manual, § (C)(2), (3). The facility staff, in turn, will print and deliver paper copies of the mail to the inmate. See DC-ADM 803, Inmate Mail and Incoming Publications Procedures Manual, § (C)(5).[3]

The United States Court of Appeals for the Third Circuit, in an unpublished opinion, has previously denied the plausibility of a First Amendment claim similar to the one that Plaintiff raises here. See Pelino v. Wetzel, No. 21-1363, 2022 WL 1239050, at *1-2 (3d Cir. Apr. 27, 2022) (considering and rejecting an inmate's claim that DC-ADM 803 infringed on his First Amendment rights, where the inmate challenged the fact that Smart Communications was electrically storing copies of his

---

[3] On the other hand, privileged mail may be sent directly to an inmate at the facility where he is incarcerated. See DC-ADM 803 § 1(A)(4), (D). DC-ADM 803 defines "Incoming Privileged Correspondence" as follows: mail from the inmate's attorney, which was either hand-delivered by the attorney to the facility or delivered through the mail system; mail from a court; or mail from an elected or appointed federal, state, or local official who has sought and obtained a control number issued by the DOC's Office of Chief Counsel. See DC-ADM 803, Glossary of Terms, Privileged Correspondence. Plaintiff asserts no allegations in his amended complaint that his privileged mail is being sent to or being scanned/copied by Defendant Smart Communications.

10

mail, and where the inmate expressed concern that prison staff would read those electronically stored copies of his mail at their leisure). In addition, district courts from Pennsylvania have held that the DOC's mail policy does not unconstitutionally infringe on an inmate's First Amendment rights. See, e.g., Smith v. Wolf, No. 19-cv-0711, 2020 WL 4551229, at *6-8 (M.D. Pa. Aug. 6, 2020) (finding that the inmate failed to state a plausible First Amendment claim concerning the DOC's mail policy, where the inmate challenged the DOC's use of Smart Communications to, among other things, copy/scan his mail); Woodell v. Pa. DOC Sec' y of Corr., No. 18-cv-4430, 2020 WL 2841380, at *8-12 (E.D. Pa. June 1, 2020), appeal dismissed sub nom. Woodell v. Wetzel, No. 20-3235, 2021 WL 1750865 (3d Cir. Jan. 12, 2021) (concluding that the inmate failed to state a plausible First Amendment claim regarding the DOC's mail policy, where the inmate challenged the DOC's use of Smart Communications' to scan/copy his mail).

Accordingly, for all of these reasons, the Court finds that Plaintiff's amended complaint has failed to plausibly state a violation of his First Amendment rights. As such, the Court will dismiss Plaintiff's claim against Defendant Smart Communications from this litigation.

### 3. Defendants Rivello, Corley, and Goss

#### a. Personal Involvement

In order for liability to attach under Section 1983, Plaintiff must sufficiently allege that each defendant was personally involved in the act or acts that he claims violated his federally protected rights. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). "A plaintiff makes sufficient allegations of a defendant's personal involvement by describing the defendant's participation in or actual knowledge of and acquiescence in the wrongful conduct." Chavarriaga v. New Jersey Dep't of Corr., 806 F.3d 210, 222 (3d Cir. 2015) (citing Rode, 845 F.2d at 1207); Dooley v. Wetzel, 957 F.3d 366, 374 (3d Cir. 2020) (stating that "[p]ersonal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence'" (quoting Rode, 845 F.2d at 1207)).

Here, the Court finds that Plaintiff's amended complaint does not give rise to a plausible inference that Defendants Rivello, Corley, or Goss personally violated his constitutional rights. Indeed, Plaintiff's amended complaint only asserts broad and conclusory allegations against Defendants Corley and Goss and asserts no allegations against Defendant Rivello. (Doc. No. 18 at 5 (alleging, only, that Defendant Corley "assault[ed] [him]" and that Defendant Goss is "liable to replace value of stolen property").) Thus, there are no allegations in Plaintiff's amended complaint that describe, as a factual matter, how Defendants Rivello, Corley, or Goss

12

participated in, or had actual knowledge of and acquiesced in, a deprivation of Plaintiff's constitutional rights. Without such allegations of personal involvement, however, liability cannot be imposed against these Defendants under Section 1983.

As a result, the Court finds that Plaintiff's amended complaint fails to state a claim upon which relief can be granted against Defendants Rivello, Corley, and Goss for failure to allege their personal involvement in this Section 1983 action. Plaintiff's claims against these Defendants will, therefore, be dismissed from the amended complaint.

### b. Rule 8 of the Federal Rules of Civil Procedure

Rule 8 of the Federal Rules of Civil Procedure requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" See Fed. R. Civ. P. 8(a)(2). This short and plain statement must give the defendant fair notice of what the plaintiff's claims are and the grounds upon which those claims rest. See Erickson, 551 U.S. at 93. "In other words, a complaint must do more than allege the plaintiff's entitlement to relief[; it] "has to show such an entitlement with its facts." See Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009) (citation and internal quotation marks omitted).

As set forth above, Plaintiff's amended complaint does not allege how Defendants Rivello, Corley, or Goss were personally involved in committing a deprivation of Plaintiff's constitutional rights. As a result, the Court has been left—

and Defendants, if served, would also be left—to speculate as to what alleged conduct on their part gives rise to constitutional infringements. Thus, because Plaintiff's amended complaint does not provide fair notice of his claims and/or the grounds upon which those claims rest, as to these specific Defendants, the Court finds that Plaintiff's amended complaint does not satisfy Rule 8 of the Federal Rules of Civil Procedure. See Garrett v. Wexford Health, 938 F.3d 69, 93 (3d Cir. 2019) ("Naturally, a pleading that is so vague or ambiguous that a defendant cannot reasonably be expected to respond to it will not satisfy Rule 8." (citations and internal quotation marks omitted)); Binsack v. Lackawanna Cnty. Prison, 438 F. App'x 158, 160 (3d Cir. 2011) (unpublished) (affirming district court's dismissal of a complaint where it "defie[d] any attempt to meaningfully answer or plead to it, and it left the defendants having to guess what of the many things discussed constituted [a cause of action]").

    **B.**    **Leave to Amend**

The only remaining issue is, therefore, whether Plaintiff should be granted leave to amend his amended complaint. Due to the applicable liberal pleading standard, a plaintiff should generally be granted leave to amend before a Court dismisses a claim that is merely deficient. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002). The Federal Rules of Civil Procedure allow for amendments to be granted liberally in light of the "principle that the purpose of

pleading is to facilitate a proper decision on the merits." See Foman v. Davis, 371 U.S. 178, 182 (1962) (citation and internal quotation marks omitted).

However, the Court may deny leave to amend where there is "undue delay, bad faith[,] or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment[.]" See id. The Court may also deny leave to amend where the proposed amendment would be futile—that is, where the pleading, "as amended, would fail to state a claim upon which relief could be granted." See In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1332 (3d Cir. 2002) (citations and internal quotation marks omitted).

In accordance with this standard, the Court finds that granting Plaintiff leave to amend his claims against Defendants DOC and Smart Communications would be futile. The Court cannot say, however, that granting Plaintiff leave to amend his claims against Defendants Rivello, Corely, or Goss would be futile and, thus, the Court will grant Plaintiff leave to file a second amended complaint in order to attempt to cure the deficiencies identified above. Plaintiff is advised that the second amended complaint must be complete in all respects. It must be a new pleading that stands by itself without reference to the original complaint, amended complaint, or any other document already filed. The second amended complaint shall set forth Plaintiff's claims in short, concise, and plain statements as required by Rule 8 of the

Federal Rules of Civil Procedure. Finally, Plaintiff is cautioned that neither conclusory allegations nor broad allegations will set forth a cognizable claim.

## IV. CONCLUSION

To conclude, the Court will dismiss Plaintiff's amended complaint (Doc. No. 18) for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2). The Court will also grant Plaintiff leave to file a second amended complaint. An appropriate Order follows.

Dated: December 7, 2022                  s/Sylvia H. Rambo
                                         SYLVIA H. RAMBO
                                         United States District Judge